PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | |
| BRAZOS LICENSING AND | § | CIVIL ACTION NO. 6:20-cv-00454-ADA |
| DEVELOPMENT, | § | CIVIL ACTION NO. 6:20-cv-00457-ADA |
|      *Plaintiff*, | § | CIVIL ACTION NO. 6:20-cv-00460-ADA |
| | § | CIVIL ACTION NO. 6:20-cv-00461-ADA |
| | § | CIVIL ACTION NO. 6:20-cv-00463-ADA |
| | § | CIVIL ACTION NO. 6:20-cv-00464-ADA |
| v. | § | CIVIL ACTION NO. 6:20-cv-00465-ADA |
| | § | |
| | § | |
| | § | |
| MICROSOFT CORPORATION, | § | |
|      *Defendant*. | § | |

**DEFENDANT MICROSOFT CORPORATION'S MOTION
FOR RECONSIDERATION OF ITS MOTION TO
TRANSFER VENUE TO AUSTIN DIVISION**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

   A. Discovery Revealed That Plaintiff's Alleged Connections to Waco Are Substantially
      Overstated ...................................................................................................... 3

   B. Discovery Revealed No Relevant Microsoft or Third Party Witnesses in Waco or Texas .... 5

   C. Microsoft Has a Physical Presence in Austin, and the Only In-Person Discovery Took Place
      in Austin ........................................................................................................ 6

III.   ARGUMENT AND AUTHORITIES ............................................................... 8

   A. Plaintiff Could Have Filed This Case in the Austin Division ................................. 9

   B. The Austin Division Is Clearly More Convenient Than the Waco Division, Which Has No
      Relevant Connection ........................................................................................ 9

      1.   Relative Ease of Access to Sources of Proof Favors Transfer, as No Relevant Evidence
           Is Identified to be in Waco ........................................................................ 10

      2.   Convenience of Attendance for Willing Witnesses to Travel to and Stay in Austin Is
           Higher than Waco ..................................................................................... 11

      3.   All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and
           Inexpensive Favor Transfer to Austin.......................................................... 13

      4.   If There Is Any Localized Interest, Austin Has a Much Greater Interest in Having This
           Case Decided at Home than Waco ............................................................... 14

   C. All Other Factors Are Neutral and Transfer Would Honor Plaintiff's Forum Choice ........ 15

IV.    CONCLUSION ................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple*,
  No. 2021-187, 2021 WL 4485016 (Fed. Cir. Oct. 1, 2021).......................................................9

*In re Benjamin Moore & Co.*,
  318 F.3d 626 (5th Cir. 2002) .............................................................................................1, 8

*Datascape, Ltd. v. Dell Techs. Inc.*,
  No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. Jun 7, 2019) ...............9, 10, 11, 13

*In re Google Inc.*,
  2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .........................................................14

*In re Google LLC*,
  2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .........................................................9

*In re Google LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .................................................11

*In re Google LLC*,
  No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021).....................................................12

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009).......................................................................................11, 15

*Identity Security LLC v. Apple, Inc.*,
  No. 1:22-cv-00058 (W.D. Tex. Jan. 25, 2022), ECF No. 59 .....................................................8

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) .......................................................................................11, 14

*McCloud v. McLinton Energy Grp., L.L.C.*,
  Civil Action No. 5:14-cv-620-XR,
  2014 WL 6388417 (W.D. Tex. Nov. 14, 2014)......................................................................10

*Mimedx Grp., Inc. v. Texas Hum. Biologics, Ltd.*,
  Case No. 1:14-CV-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014) .............. *passim*

*Neo Wireless LLC v. Dell Techs. Inc.*,
  No. 6:21-cv-00024, Slip Op. (W.D. Tex. Jan. 20, 2022), ECF No. 60.................................8, 13

*In re Netflix*,
  No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022)..........................................9, 11, 13

*In re NetScout Sys., Inc.*,
    2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ........................................................11

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ........................................................................................10

*In re Pandora Media*,
    LLC, No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ........................................12

*In re Quest Diagnostics Inc.*,
    No. 2021-193, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021) ................................................12

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ..........................................................................................8, 9, 13

*Sonrai Memory Ltd. v. Oracle Corp.*,
    6:21-cv-00116-ADA, 2022 WL 315023 (W.D. Tex. Feb 2, 2022) ........................................8

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ........................................................................................15

*In re Volkswagen AG*,
    371 F.3d 201, 205 (5th Cir. 2004) ....................................................................................12

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..........................................................................................8, 10

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) ........................................................................................14

**Rules & Statutes**

28 U.S.C. § 1404 ..................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ..............................................................................................4, 5, 6

Contrary to the promises of Plaintiff WSOU Investments, LLC ("WSOU") at the outset of the case, discovery has shown that there are no relevant ties between this case and this forum. Accordingly, Defendant Microsoft Corporation ("Microsoft") respectfully requests reconsideration of the Court's prior denial of its motion for an intra-district transfer to the Austin Division under 28 U.S.C. § 1404. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Now-completed discovery has shown that, contrary to sworn declarations from WSOU, all potential trial witnesses are remote from Texas. These cases could have been brought in Austin, where trial would be more convenient under current Federal Circuit law for any reasonably-expected trial witnesses, and the cases accordingly should be transferred there.

## I.   INTRODUCTION

WSOU resisted Microsoft's original motion to transfer to the Austin Division based largely on the declaration of its Managing Director of Business Development, Mr. Hogan. Decl. of Matt Hogan ("Hogan Decl.") (Oct. 16, 2020), Dkt.-454 ECF No. 32-1. The Court denied Microsoft's motion, crediting Mr. Hogan's descriptions of WSOU's Waco activities, citing considerations of judicial economy and court congestion, and discounting speculative burdens on party and other willing witnesses to attend trial. Order (Apr. 7, 2021), Dkt.-454 ECF No. 74. Discovery revealed WSOU's claims of genuine Waco ties to be, at best, exaggerated and all potential trial witnesses to reside far outside this District. At WSOU's request, Microsoft source code was transported securely to Austin, and continues to be inspected by WSOU consultants in person. All other document discovery, depositions and hearings have been conducted virtually.

The facts uncovered during discovery and the Federal Circuit's recent clarifications as to proper consideration of judicial economy, court congestion, litigation-driven corporate residency, and party witness convenience under 28 U.S.C. § 1404 support reconsidering, and granting, Microsoft's transfer motion. WSOU's declaration did not portray an accurate picture of WSOU

executives' or the WSOU Waco office's roles. The only two WSOU witnesses with knowledge of WSOU's infringement claims, asserted patents, ownership, potential value, or licensing history reside and work in Los Angeles and Hawaii. Indeed, discovery shows that all of the potential trial witnesses for Microsoft and WSOU reside remote from this District.[1]  Microsoft witnesses face materially less time away from their homes, families and offices for a trial in Austin, and Microsoft's operations in Austin allow its witnesses to work securely while still being available for trial. Microsoft has no facilities in the Waco Division broadly. WSOU's witnesses also have to travel, and Austin is at least equally convenient for them. Further, transferring this case for trial in Austin still honors Plaintiff's forum choice, yet provides a clearly more convenient forum for the actually expected trial witnesses.

The timing of this motion is a direct consequence of WSOU's unusual and languid prosecution of these cases. As the case began, WSOU opposed Microsoft's proposal to group cases and stagger deadlines. Dkt-454, ECF No. 30. With all twelve then-pending cases scheduled for trial in March 2022 as WSOU had insisted, WSOU sought a first discovery extension for every case just as the original discovery period was closing in September 2021, looking to overcome its failure to conduct deposition discovery diligently over the summer of 2021. WSOU also sought to add Microsoft Teams to one of the pending cases (-464) and to expand the Xbox Live case with a late and  burdensome request for a wide array of detailed data. WSOU also substituted new counsel, and dropped two cases in late 2021. Additional extensions staged by case groupings allowed WSOU finally to complete its deposition discovery by early March 2022, with expert discovery now underway. Responsive to the parties' serial submissions on discovery extensions, the Court provided trial dates for three case groupings on February 28, 2022. A three-case group is now on the trial calendar beginning June 21, 2022, a second group beginning July 19, 2022, and

---

[1] To the extent relevant, no witness is subject to the 100-mile rule.

a third group beginning August 2, 2022. WSOU, however, has dropped the July-slated cases, and the parties agree that the disparate patents and accused technology for the cases on the August calendar will require further sub-division, though the pre-trial schedule will not allow moving up any of those cases. WSOU's late addition of accused products and services led to new rounds of Microsoft code production, documents and witnesses. After depositions, WSOU dropped five cases, but despite dropping five patents, WSOU maintains the extraordinary breadth of its accusations against Microsoft's business, including Xbox Live, Skype Consumer, Teams, HoloLens, Windows Server, and Azure.[2] By design, this breadth makes bringing a large number of Microsoft witnesses to trial unavoidable.  Now that WSOU's actual litigation cards are on the table, it is finally possible to know the application of the convenience factors in light of the reasonably likely trial scope, before the Court devotes resources to the final pretrial process and any appropriate dispositive motions.

The following discussion focuses on the factors that were disputed after the prior briefing, as all other factors were agreed to be neutral. Under currently controlling precedent and based on the full discovery record, each factor favors transfer.

Counsel for the parties have conferred in a good faith attempt to resolve the matter but were unable to reach agreement.

## II.    BACKGROUND

### A.    Discovery Revealed That Plaintiff's Alleged Connections to Waco Are Substantially Overstated

Plaintiff's connections to Waco were constructed for this litigation and are superficial, at best. WSOU Investments LLC is a Delaware corporation, formed in July 2017 to purchase intellectual property and registered with the Texas Secretary of State on January 7, 2020 as a

---

[2] The parties do not presently agree whether Skype for Business is accused.

Foreign LLC with a business registration at 605 Austin Ave Ste 6, Waco, TX 76701. Decl. of Irene Yang in Support of Mot. to Transfer ("Yang Decl.") Exs. 1–4 (Oct. 2, 2020), Dkt.-454 ECF No. 31-3 – 31-7. WSOU's registered agent for service is in Austin. *Id.* The Assumed Name Certificate for WSOU's d.b.a., Brazos Development and Licensing, was filed with the Texas Secretary of State on January 21, 2020 and lists 211 E. 7th Street, Suite 620 in Austin as its address. Yang Decl. Ex. 3 at 7, Ex. 4 at 2. WSOU registered a business address in Waco in January of 2020, opened that office in February 2020, then shortly thereafter began filing patent infringement lawsuits in this District. Yang Decl. Ex. 5. WSOU first delivered documents to its Waco office in or around October 2020, *only after* this litigation was filed. Decl. of Irene Yang in Support of Mot. for Reconsideration ("2nd Yang Decl.") Ex. A, Hogan Dep. 126:6-10 (Sept. 2021).

The Waco activities of individuals associated with WSOU do not relate to these lawsuits, and no material business activities preceded the filing of these cases. Indeed, WSOU's Initial Disclosures originally listed only three individuals: Craig Etchegoyen, Stuart A. Shanus, and Matt Hogan. 2nd Yang Decl. Ex. B (WSOU Initial Disclosures, Mar. 24, 2021).[3] WSOU proffered only Mr. Etchegoyen and Mr. Shanus—who both reside outside of Texas—as Rule 30(b)(6) witnesses. Mr. Etchegoyen confirmed that he lives and files taxes in Hawaii, while spending some of his time in Southern California and Dallas, Texas. 2nd Yang Decl. Ex. D, Etchegoyen Dep. 10:7-11:2 (Oct. 13, 2021). Mr. Shanus, WSOU's president and the only individual identified on Plaintiff's corporate registrations in Texas, confirmed that he lives in and works from Los Angeles. 2nd Yang Decl. Ex. E, Shanus Dep. 8:13-18, 17:12-15 (Oct. 15, 2021).

WSOU's declarant in opposing transfer, Mr. Hogan, revealed that his activities on behalf of WSOU have no relation to these lawsuits. Mr. Hogan testified that he moved to Waco from

---

[3] In late 2021, WSOU amended its initial disclosures to add Sheyanna Osceola, who appears to be a recent law school graduate newly hired in WSOU's Waco office. 2nd Yang Decl. Ex. C at 2 (WSOU Suppl. Initial Disclosures, Nov. 15, 2021).

New York in February 2020, immediately before the filing of these cases. 2nd Yang Decl. Ex. A, Hogan Dep. 10:2-14. He further testified that he is not involved with and does not expect to become involved with licensing, analyzing, litigating, or purchasing patents beyond trying to source opportunities for further WSOU patent acquisitions outside of these cases. *Id.* 20:3-22:5, 26:17-21, 27:17-29:3, 52:5-21, 74:7-10, 84:13-25. He has no information about the formation or corporate structure of WSOU. *Id.* 49:3-17, 51:2-12. He has no understanding of the technology in the asserted patents, no understanding of the accused Microsoft products and services, and no responsibilities related to managing or settling these cases. *Id.* 62:8-15, 74:23-75:8, 75:23-77:6. Mr. Hogan further testified that he had never met with WSOU's principals in Waco. *Id.* 58:9-17. He did not know if he was going to testify at trial or even attend the trial. *Id.* 125:11-15.

Further, some of the statements in Mr. Hogan's declaration apparently were aspirational. For example, despite stating that WSOU was working to offer a quarterly webinar series for Baylor law students (Hogan Decl. ¶ 5), he testified that by September 2021 he had not made any presentations at Baylor. 2nd Yang Decl. Ex. A, Hogan Dep. 127:11-128:7. WSOU similarly had no business relationship with Waco Ventures. *Id.* 128:25-129:12; *contra* Hogan Decl. ¶ 6. And WSOU had not started any meet-ups, tech or otherwise, in Waco. 2nd Yang Decl. Ex. A, Hogan Dep. 129:13-15; *contra* Hogan Decl. ¶ 5.  In other words, WSOU's declared "deep roots" in Waco have been shown to be nothing more than a litigation-inspired façade.

## B.   Discovery Revealed No Relevant Microsoft or Third Party Witnesses in Waco or Texas

Microsoft's Initial Disclosures and Rule 30(b)(6) designations across these cases identify dozens of individuals and companies, though none in Texas. 2nd Yang Decl. Ex. K.1 – K.7. For the cases accusing Azure or Windows Server (-454, -461, -465), Microsoft identified nine

employees from the greater Seattle area and one who resides in Israel.[4] WSOU deposed all but one of these individuals. For the cases accusing Skype or Teams (-460 and -464), Microsoft identified six employees from the greater Seattle area, two who reside in Estonia, and four who reside in Czech Republic. WSOU deposed all of these individuals. Third party Department of Computer Science at Columbia University, located in New York, was also deposed in the -464 case in connection with the prior art CINEMA system. For the case accusing HoloLens2 (-463), Microsoft identified five employees from the greater Seattle area. WSOU deposed two of these individuals. And, for the case accusing Xbox Live (-457), Microsoft identified four employees from the greater Seattle area. WSOU deposed all four. There was also a witness for Electronic Arts who was located in North Vancouver, British Columbia at the time of his deposition. WSOU took no other depositions of individuals or companies identified by Microsoft.

None of the inventors in any of these cases has been subpoenaed or deposed, none are expected to testify at trial, and, as explained in Microsoft's original Motions, all appear to reside far outside this District, or even outside the United States. Mot. to Transfer 4-5 (Oct. 2, 2020), Dkt.-454 ECF No. 31.[5]

Discovery has revealed no relevant third-party witnesses in Texas.

**C.     Microsoft Has a Physical Presence in Austin, and the Only In-Person Discovery Took Place in Austin**

Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Compl. ¶ 3 (June 2, 2020), Dkt.-454 ECF No. 1.[6] Tara Eaves, a Human Resources

---

[4] At the time of his deposition, one of Microsoft's Rule 30(b)(6) designees in the Seattle/Redmond area had temporarily relocated to Toronto, Canada.

[5] The case involving an inventor in Frisco, Texas has been dismissed. *See* Order (Mar. 3, 2022), Dkt.-458, ECF No. 113.

[6] Unless otherwise indicated, citations to "Compl." herein refer to the Complaint in each of the seven remaining WSOU actions filed against Microsoft. Paragraphs 1-19 of these WSOU Complaints are identical.

Data Analyst Group Manager at Microsoft, confirmed that Microsoft does not maintain a place of business in the Waco Division of the Western District of Texas. *See* Decl. of Tara Eaves. ("Eaves Decl.") ¶ 6 (Oct. 2, 2020), Dkt.-454 ECF No. 31-1; *see also* Decl. of Sandy Park ("Park Decl.") ¶ 8 (Oct. 2, 2020), Dkt.-454 ECF No. 31-2.

Discovery addressed Microsoft's activities as a whole, as well as the design, development and marketing of the accused products/services – and confirmed they were focused in and around Seattle, Washington, or in foreign countries. Plaintiff's allegations in the Complaint likewise relate to Microsoft facilities or activities in Austin, or to Texas overall; none relate to or allege a presence within the Waco Division. *See* Compl. ¶¶ 3–19. Plaintiff's only other allegations with respect to Microsoft physical locations relate to San Antonio. *See* Compl. ¶¶ 16–17.

Microsoft has had an office location at 10900 Stonelake Boulevard in Austin since 2009, and employs nearly 200 people in the Austin area. Park Decl. ¶¶ 4–5; Eaves Decl. ¶ 7.[7] The Austin office is a secured Microsoft site available to employees with the benefits and conveniences of being in a secure Microsoft environment. Park Decl. ¶¶ 5-7. These include the ability to reserve private work space, use conference rooms, access Microsoft's corporate high speed internet and internal Corporate Network, and take advantage of full IT, facilities, reception, and other support staff. Park Decl. ¶¶ 6-7. Microsoft employees from Washington State and elsewhere may be granted access to the Austin office using normal Microsoft security procedures. Park Decl. ¶ 5.

Microsoft also provided for source code inspection in Austin at Plaintiff's request. *See* 2nd Yang Decl. Ex. F, Hr'g Tr. 11:7-19, 18:8-16 (Nov. 30, 2020). Plaintiff's consultants have been reviewing that source code in Austin from December 2020 to the present. Discovery in these cases otherwise has been conducted virtually and electronically.

---

[7] The Austin office covers approximately 20,000 square feet and one floor of a multi-tenant building and operates primarily as a regional sales office. Park Decl. ¶ 4.

### III.    ARGUMENT AND AUTHORITIES

A court may reconsider a prior ruling based upon "(a) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.,* 318 F.3d 626, 629 (5th Cir. 2002). Here, both clarification of controlling law and new evidence are present.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The § 1404(a) factors apply as much to transfers ***between*** divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd*., 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added). This District has repeatedly recognized and applied the same principle, transferring many patent matters from Waco to Austin. *See, e.g.*, *Sonrai Memory Ltd. v. Oracle Corp.*, 6:21-cv-00116-ADA, 2022 WL 315023 (W.D. Tex. Feb 2, 2022); *Identity Security LLC v. Apple, Inc.,* No. 1:22-cv-00058 (W.D. Tex. Jan. 25, 2022), ECF No. 59*; Neo Wireless LLC v. Dell Techs. Inc.*,  No. 6:21-cv-00024, Slip Op. (W.D. Tex. Jan. 20, 2022), ECF No. 60.

Where, as here, it is not disputed that the cases could have been brought in the destination venue, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (quoting § 1404(a)), the Court must weigh a number of factors to determine the relative convenience of each venue:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Radmax*, 720 F.3d at 288 (quotation marks omitted) (citing *Volkswagen*, 545 F.3d at 315). Where the analysis of the relevant factors shows the transferee forum to be "clearly more convenient" than the plaintiff's original choice, the court must order transfer. *Id.*

The Federal Circuit recently heightened its effort to achieve uniform application of 28 U.S.C. § 1404 across all District Courts. As recently explained in a case originating from another district:

> "Motions to transfer are decided by weighing private and public interest factors to compare the relative convenience of the venues." . . . *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *2 (Fed. Cir. Aug. 2, 2021) ("That determination is focused on a comparison of the relative convenience of the two venues based on assessment of the traditional transfer factors." . . .). We have explained that "the relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" . . .

*In re Netflix*, No. 2022-110, 2022 WL 167470, at *2 (Fed. Cir. Jan. 19, 2022) (some citations omitted). Faster time to trial cannot override the convenience of the accused infringer's party witnesses. *Id.* at *5; *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021). Relative inconvenience where party witnesses still must travel for trial still outweighs speed to trial. *See In re Apple*, No. 2021-187, 2021 WL 4485016, at *2 (Fed. Cir. Oct. 1, 2021).

### A. Plaintiff Could Have Filed This Case in the Austin Division

As the Court previously noted, this case could have been filed in Austin.

### B. The Austin Division Is Clearly More Convenient Than the Waco Division, Which Has No Relevant Connection

The Fifth Circuit's enumerated factors (adopted for intra-district transfers in *Radmax*) all support that trial of these cases in Austin would be clearly more convenient than in Waco, with multiple factors heavily favoring transfer and ***no*** factors supporting trial in the Waco Division. Thus, transfer is warranted. *See Datascape, Ltd. v. Dell Techs. Inc.,* No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *1-2 (W.D. Tex. Jun 7, 2019) ("Most—if not all—of the relevant connections in this case are to Austin rather than to Waco. The Court agrees with Defendants that, overall, the relevant convenience weighs heavily in favor of transfer."); *see also Radmax*, 720 F.3d at 290 (it was an "extraordinary error" to decline transfer where three factors supported transfer, five were neutral, and "not a single relevant factor favors the plaintiffs' chosen venue" (brackets

omitted) (quoting *Volkswagen*, 545 F.3d at 318)); *Mimedx Grp., Inc. v. Texas Hum. Biologics, Ltd.*, Case No. 1:14-CV-464-LY, 2014 WL 12479284, at *3 (W.D. Tex. Aug. 12, 2014) (ordering transfer where four factors favored transfer, four were neutral, and none favored plaintiff's choice of venue).

Discovery showed that these cases have no connection to the Waco Division. No witnesses or Microsoft documents are in Texas, with the exception of source code moved to and hosted for inspection **in Austin**. Any WSOU documents produced from in Waco were moved there for these cases. Accordingly, at least the relative ease of access to sources of proof, the cost of attendance for willing witnesses, and Austin's local interest all strongly favor transfer.

### 1.    Relative Ease of Access to Sources of Proof Favors Transfer, as No Relevant Evidence Is Identified to be in Waco

The first factor considers the location of relevant evidence. As the Federal Circuit has noted, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (applying Fifth Circuit law). Moreover, as this Court explained in *Datascape*, "the question is *relative* ease of access, not *absolute* ease of access." *Datascape*, 2019 WL 4254069, at *2 (quoting *Radmax*, 720 F.3d at 288) (emphasis in original); *see also Mimedx*, 2014 WL 12479284, at *2.

Discovery revealed no relevant Microsoft documents in Texas. However, at WSOU's request, Microsoft transported its source code to Austin for inspection at a facility with suitable control and security. None of the relevant evidence is in the Waco Division. *See McCloud v. McLinton Energy Grp., L.L.C.*, Civil Action No. 5:14-cv-620-XR, 2014 WL 6388417, at *3 (W.D. Tex. Nov. 14, 2014) ("Plaintiffs point to **no** evidence in San Antonio or within the San Antonio Division.").

10

WSOU's documents that it moved with itself to Waco for litigation purposes are of no relevance in deciding the transfer issue and should not be given weight in the convenience analysis. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320-21 (Fed. Cir. 2021) (*citing In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)).

Accordingly, discovery has shown that "access to sources of proof is *relatively* easier in Austin than it is in Waco. This factor thus supports transfer." *Datascape*, 2019 WL 4254069, at *2 (emphasis in original).

### 2.  Convenience of Attendance for Willing Witnesses to Travel to and Stay in Austin Is Higher than Waco

The third factor "appropriately considers the cost of attendance of **all** willing witnesses," including both non-party and party witnesses. *See Mimedx*, 2014 WL 12479284, at *2. Discovery showed that all Microsoft witnesses and all of WSOU's knowledgeable witnesses are located outside this District. As such, unlike the situation addressed by the Court on Microsoft's original motion, the potential witness list is limited, concrete and comprised entirely by witnesses outside this Division, and indeed outside this District. The convenience of those witnesses becomes paramount in the transfer analysis. *In re Netflix*, 2022 WL 167470, at *5.  As the Federal Circuit has repeatedly observed, "time is a more important metric than distance" in evaluating the relative convenience of two forums. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). And because "[t]here is no major airport in the Waco Division of the Western District of Texas, and the Waco courthouse is more than 100 miles from the nearest airport with direct flights to the northeast U.S.," it often takes less time and hassle for a witness to travel to a different forum, even when the alternate forum is geographically farther away than Waco. *Id.*; *see In re NetScout Sys., Inc.*, 2021-173, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021) ("The Fifth Circuit has stated that the convenience of the witnesses is best served if the court can 'minimize the time when [witnesses] are removed from their regular work or

home responsibilities.'") (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)); *see, e.g.*, *In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757, at *2 (Fed. Cir. Nov. 10, 2021) ("[E]ven though the physical distance from Maryland and New Jersey to the Central District of California is greater than the distance to Waco, the record does not show that the total travel time for out-of-district witnesses would be significantly different."); *In re Pandora Media*, LLC, No. 2021-172, 2021 WL 4772805, at *5 (Fed. Cir. Oct. 13, 2021) ("We have rejected the rigid application of the 100-mile rule in cases in which the witnesses will be required to travel a significant distance no matter where they testify."); *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021) ("Although the district court emphasized that Mr. Morris would have not have to travel as far from his home in Georgia to reach Waco than to reach the Northern District of California, the difference in distance is not as important as the difference in travel time and the fact that the witness would be required to be away from home for several days in any event.").

Travel time and time away from their normal work locations and families for the willing witnesses from outside this District overwhelmingly favors Austin. As set forth above, the Microsoft witnesses deposed in these cases are primarily from the Seattle, Washington area, but are also located in Israel and various locations in Eastern Europe. For Microsoft witnesses, traveling to Austin is much more convenient because the witnesses can work out of Microsoft's Austin facility and take advantage of private workspace, conference rooms, and IT services such as the corporate internet connection and private intranet. *See* Park Decl. ¶¶ 6-7. Visiting Microsoft employees to the Austin office are also fully supported by staff in the Austin office, a convenience unavailable to them in Waco. Park Decl., ¶ 7. In addition, travel to Waco instead of Austin from the Seattle area is more costly and time consuming because there are no direct flights from Seattle

to Waco, while there are many direct flights from Seattle to Austin, daily. *See* 2nd Yang Decl. Exs.

G-H.   This situation is exacerbated for any overseas witnesses.

For Plaintiff's own president coming from Los Angeles, travel to Austin is similarly more convenient because there are numerous direct flights per day, while there are no direct flights to Waco. *Id*. For Plaintiff's witness coming from Kailua-Kona, Hawaii, there are flights with one stop to Austin, while all flights to Waco require at least two stops. *See* 2nd Yang Decl. Exs. I-J.

The inventors are scattered throughout the country and the world, none appear to be located within 100 miles of the Waco Division or the Austin Division, and none are expected to testify at trial – indeed none appear on WSOU's Initial Disclosures and none were subpoenaed or deposed.

This factor strongly favors transfer, as there appear to be no expected witnesses located in or near Waco, while travel to Austin rather than Waco will be more convenient for all potential witnesses. *Neo Wireless LLC v. Dell Techs. Inc.*, No. 6:21-cv-0024, Slip Op. (W.D. Tex. Jan. 20, 2022), ECF No. 60; *Netflix,* 2022 WL 167470, at * 4-5; *Datascape*, 2019 WL 4254069, at *2.

### 3.   All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive Favor Transfer to Austin

The fourth factor considers practical problems, speed, and expense. These cases are set for multiple trials, the first of which  begins in about three months. Order Resetting Trial (Feb. 4, 2022), Dkt.-454 ECF No. 121. Deposition discovery has just concluded in some cases, and expert discovery is ongoing in others. Although the court has construed various disputed terms, it has yet to address dispositive motions or disputes directed to contested expert opinions or other trial-related matters. Transferring the case to the Austin Division is unlikely to result in any delay that could override the demonstrated convenience to the witnesses who must travel to this District for trial. *See Radmax*, 720 F.3d at 289 ("[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer."); *Mimedx*, 2014 WL 12479284, at *2. There are no other pending cases related to the asserted patents and WSOU is not

engaged in the manufacture or sale of products that practice the patents. Moreover, WSOU's failure to timely prosecute these cases, resulting in repeated extensions, further demonstrates that rapid disposition of the case is not "worthy of important weight." *See Juniper*, 14 F.4th at 1322.

Furthermore, the Federal Circuit (applying Fifth Circuit law) has expressly held that it is legal error to allow judicial economy considerations to "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010); *see also In re Google Inc.*, 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (nonprecedential) ("[I]t is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits . . . . To hold otherwise, we would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district.").

Accordingly, this factor also strongly weighs in favor of transfer.

### 4.     If There Is Any Localized Interest, Austin Has a Much Greater Interest in Having This Case Decided at Home than Waco

Finally, to the extent there is any localized Texas interest in the outcome of these cases, it lies in Austin, not Waco. Plaintiff's allegations regarding Microsoft's presence in Texas relate to Austin, where Microsoft employs about 200 people. Eaves Decl. ¶ 7. By contrast, WSOU's Waco presence was created in anticipation of filing suit. Yet, none of WSOU's Waco activities has any relevance to these cases and its Waco witness did not even know the general subject matter of the asserted patents or what Microsoft products and services have been accused. The patents-in-suit were not developed by WSOU employees; the named inventors have no connection to Waco; and, not even the principals of WSOU are located in Texas. Thus, to the extent that the outcome of this case will affect any Texas local interests, it will be Austin's local interests. *See Mimedx*, 2014 WL 12479284, at *3 ("Defendants and their employees are local to the San Antonio area. The ultimate

outcome of this [patent] suit likely affects local San Antonio interests more acutely than local Austin interests."); *see also Hoffmann-La Roche*, 587 F.3d at 1338 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, [the local interest] this factor should be weighed in that venue's favor."). Thus, this factor weighs in favor of transfer. *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("[T]he district court gave too much weight to [plaintiff's] choice of venue . . . . Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").

### C.   All Other Factors Are Neutral and Transfer Would Honor Plaintiff's Forum Choice

The remaining factors are neutral and do not weigh for or against transfer. There are no apparent compulsory subpoena power issues involved. Both Divisions are familiar with and equally capable of applying federal patent laws, neither would present a conflict of law or require the application of foreign law, and the record reflects no administrative difficulties flowing from court congestion. Moreover, both Divisions are within the Plaintiff's chosen District.

## IV.   CONCLUSION

Discovery has shown that the Waco Division has no ties to this lawsuit, and the Austin Division is clearly more convenient. Thus, this case should be transferred to the Austin Division. Microsoft respectfully asks that the Court grant reconsideration and transfer these cases.

Date: March 18, 2022                              */s/ Melissa R. Smith*

*Of Counsel*                                      Melissa R. Smith
                                                 Bar No. 24001351
Michael J. Bettinger                             melissa@gillamsmithlaw.com
mbettinger@sidley.com                            James "Travis" Underwood,
Irene Yang                                       Bar No. 24102587
irene.yang@sidley.com                            travis@gillamsmithlaw.com
SIDLEY AUSTIN LLP                                GILLAM & SMITH, LLP
555 California Street, Suite 2000                303 South Washington Avenue
San Francisco, CA 94104                          Marshall, Texas 75670
Tel: (415) 772-1200                              Tel: (903) 934-8450
Fax: (415) 772-7400                              Fax: (903) 934-9257

Richard A. Cederoth
rcederoth@sidley.com
John W. McBride
jwmcbride@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Brooke S. Böll
brooke.boll@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 896-6633
Fax: (213) 896-6600

*Attorneys for Defendant Microsoft
Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record as identified below.

*/s/ Melissa R. Smith*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(g), counsel for Defendant met and conferred with counsel for Plaintiff, and counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion.

*/s/ Melissa R. Smith*
Melissa R. Smith

17