**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Civil Action No. 6:20-cv-460 <br> Civil Action No. 6:20-cv-464 <br><br> ██████████████ <br><br> PUBLIC VERSION |

**MICROSOFT CORPORATION'S MOTION TO EXCLUDE
<u>IMPROPER DAMAGES OPINIONS AND TESTIMONY OF WSOU'S EXPERTS</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................... 1

II.    BACKGROUND ................................................................................................................. 2

    A.     The Asserted Patents and Accused Products ........................................................ 2

        1.     The '519 Patent (-464 Action) ................................................................. 2

        2.     The '758 Patent (-460 Action) ................................................................. 3

    B.     WSOU's Expert Reports ...................................................................................... 3

        1.     Apportionment ........................................................................................ 3

        2.     Incremental Profits ................................................................................. 5

III.   LEGAL STANDARDS ....................................................................................................... 5

IV.    WSOU'S REASONABLE ROYALTY OPINIONS SHOULD BE EXCLUDED. ........... 7

    A.     Mr. Lipoff's Apportionment Opinion for the '519 Patent Is Conclusory and
        Should Be Excluded. ............................................................................................ 7

    B.     Mr. Lipoff Failed To Apportion Out Non-Patented Features Of The Accused
        Products For The '758 Patent. .............................................................................. 8

    C.     Messrs. Blok's and Bratic's Incremental Profits Analysis for Both Patents Is
        Not Tied To The Patents-In-Suit Or To The Accused Products. .......................... 10

V.     CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................................5, 6

*Droplets, Inc. v. Yahoo, Inc.*,
   Case No. 12 cv-03733-JST, Dkt. 1000 (N.D. Cal. Jan. 12, 2022) ....................................12, 13

*Elder v. Tanner*,
   205 F.R.D. 190 (E.D. Tex. 2001) ..............................................................................6

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018) ................................................................................9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ................................................................................10

*Knight v. Kirby Inland Marine Inc.*,
   482 F.3d 347 (5th Cir. 2007) ...................................................................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..............................................................................................6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ...................................................................................7

*MLC Intell. Prop. LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ................................................................................8, 10

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
   30 F.4th 1339 (Fed. Cir. 2022) ................................................................................10

*Summit 6, LLC v. Samsung Elecs. Co. Ltd.*,
   802 F.3d 1283 (Fed. Cir. 2015) ................................................................................6

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ................................................................................12

*United States v. Hicks*,
   389 F.3d 514 (5th Cir. 2004) ...................................................................................6

*United States v. Valencia*,
   600 F.3d 389 (5th Cir. 2010) ...................................................................................6

**RULES**

Fed. R. Evid. 104(a)............................................................................................................6

Fed. R. Evid. 702 ..................................................................................................... *passim*

**LIST OF EXHIBITS**

| Dec. Ex.[1] | Document Name | Document Abbreviation |
|---|---|---|
| Ex. A | U.S. Patent No. 8,625,758 | '758 Patent |
| Ex. B | U.S. Patent No. 7,706,519 | '519 Patent |
| Ex. C | Excerpts of the Expert Report of Mr. Stuart Lipoff – Infringement of U.S. Patent No. 7,706,519 (Mar. 22, 2022) | Lipoff 519 Inf. Rep. |
| Ex. D | Excerpts of the Expert Report of Mr. Stuart Lipoff - Infringement of U.S. Patent No. 8,625,758 by Microsoft Corporation (Mar. 22, 2022) | Lipoff 758 Inf. Rep. |
| Ex. E | Excerpts of Appendices A and B from the Expert Report of Justin R. Blok and Walter Bratic (Mar. 22, 2022) | Blok Rep. |
| Ex. F | Excerpts of the deposition transcript of Luis Carrasco, taken on February 4, 2022 | Carrasco Dep. |
| Ex. G | Excerpts of the deposition transcript of Stuart Lipoff, taken on May 4, 2022 | Lipoff Dep. |
| Ex. H | Excerpts of the deposition testimony of Justin R. Blok, taken on May 13, 2022 | Blok Dep. |
| Ex. I | *Droplets, Inc. v. Yahoo, Inc.*, Case No. 12-cv-03733-JST, Dkt. 1000 (N.D. Cal. Jan. 12, 2022) | *Droplets* Order |

---

[1] All exhibits attached to Declaration of Irene Yang ("Yang Decl.") filed concurrently herein.

## I.       INTRODUCTION

Defendant Microsoft Corporation ("Microsoft") moves to exclude certain damages-related opinions of Plaintiff WSOU Investments, LLC's ("WSOU") experts, Messrs. Stuart Lipoff, Justin Blok, and Walter Bratic, under Federal Rule of Evidence 702.  WSOU's damages experts, Messrs. Blok and Bratic, offered opinions through their expert report regarding reasonable royalty damages related to Microsoft's alleged infringement of U.S. Patent Nos. 8,625,758 ("the '758 Patent") and 7,706,519 ("the '519 Patent").  Their analysis suffers from at least two defects that render their opinions unreliable and correspondingly inadmissible.

First, Messrs. Blok's and Bratic's jointly proposed reasonable royalties are not properly apportioned as to the claimed inventions even though the accused products contain both allegedly infringing and incontestably non-infringing features. For both the '519 Patent and the '758 Patent, Messrs. Blok and Bratic rely on generic, unsupported conclusions made in WSOU's technical expert Mr. Lipoff's infringement reports and purported statements made by Mr. Lipoff during interviews with Messrs. Bratic and Blok. Mr. Lipoff's conclusory statements do not provide a technical apportionment at all, much less a reliable one on which Messrs. Blok and Bratic could base their royalty analysis. *See* Blok Dep., 10:13-24, 13:11-17.

Second, Messrs. Blok and Bratic derive their reasonable royalty by applying an arbitrary allocation of incremental profits between Microsoft and licensors of the asserted patents in a hypothetical negotiation.  By using Microsoft's company-wide R&D-to-operating expense ratio, Messrs. Blok and Bratic fail to sufficiently tie their analysis to the patents-in-suit, the accused products, or any facts of these cases.

Accordingly, the Court should exclude Mr. Lipoff's apportionment opinions and Messrs. Blok's and Bratic's reasonable royalty analysis.

## II.   BACKGROUND

### A.   The Asserted Patents and Accused Products

#### 1.   The '519 Patent (-464 Action)

The '519 Patent is directed generally to a telephonic station which appears "virtually-resident"—*e.g.* it may appear local to a calling station, while being physically located at a different location—in a telephonic network. '519 Patent, 1:15-26, 4:21-31, 8:5-10, Cl. 1. The "virtually-resident" telephonic station is coupled to a packet data network and has a packet data network address that is dependent upon the location of its connection to the packet data network. *Id.* at 6:26-33. The '519 patent includes an "indexer" that maps the identifier that makes the calling station appear virtually resident to a packet data network address. *Id.*, 6:7-21.

Mr. Lipoff explains the asserted claims using Figure 1 of the '519 patent, reprinted below, which he describes as follows: "an exemplary network where a communication station (14) can appear to be virtually resident to telephonic switch (16) despite being physically resident outside switch 16 and instead resident in a packet data network (28). An index (52) and indexer (48) in a proxy server (34) provides for linking the identity of the communication station to the identity of the station within the PDN so that calls can be effected between the PDN (28) and the telephonic switch (16)." Lipoff 519 Inf. Rep., ¶¶ 71-72.



WSOU accuses Microsoft's Skype for Consumer (SfC), Skype for Business (SfB), and Teams (collectively, "the Accused Skype Products") of infringing the '519 Patent.

### 2.    The '758 Patent (-460 Action)

The '758 patent describes a method for sponsoring a communication service that is provided directly to a user of that service, based on rules for charging that sponsor. *See, e.g.* '758 Patent, Abstract, 1:44-49. WSOU has accused Skype Manager, a tool for use with the Skype Consumer service of infringing the '758 Patent. Skype Manager is a web-based management tool for SfC that allows SfC users serving as administrators to, among other things, create groups comprised of other users, create accounts for users, and allocate credits to those users. *See* Lipoff 758 Inf. Rep., ¶¶ 59, 64-65. Skype Manager includes many features that are admittedly not addressed or covered by the '758 Patent.

### B.    WSOU's Expert Reports

### 1.    Apportionment

For apportioning with respect to the '519 Patent, Messrs. Bratic and Blok ostensibly rely on Mr. Lipoff's opinion that the Accused Skype Products share the common "central" ability "to place and receive telephone calls to and from third parties that use external legacy connections outside of the [SfC], [SfB], or Teams networks." Lipoff 519 Inf. Rep., ¶ 41; Blok Dep., 9:20-10:7. From this unsupported assertion, Messrs. Bratic and Blok purport to apportion the allegedly infringing versus non-infringing features of the Accused Skype Products based on speculation— not on any replicable, reliable methodology. For example, as to SfC, Messrs. Bratic and Block calculate revenues purportedly attributable only to the teachings of the asserted claims of the '519 Patent while apportioning out revenues for Skype Manager and SMS texting, the only two other SfC features they choose to account for, without explanation or basis as to their decision. *See* Blok Rep., Appendix B, ¶ 98 (acknowledging that "SfC includes various features and

3

functionalities"), ¶¶ 103-104 (discussing SfC revenue calculation based on apportioning out only Skype Manager and SMS Text). That Messrs. Bratic and Block "*assumed* that revenues related to SfB and Teams ability for users to make and receive phone calls via PSTN . . . are reported together" thus leading them to jointly analyze those products' profitability and commercial success further erodes the adequacy of their methodology. *Id*. ¶ 108 (emphasis added). Messrs. Bratic's and Blok's interpretation of Mr. Lipoff's conclusory opinion on what the '519 Patent covers with respect to the features and functionalities of the Accused Skype Products results in royalty opinions that are speculative and unrooted from credible methodology, rendering them inadmissible under Rule 702.

For the '758 Patent, Messrs. Blok and Bratic depend on Mr. Lipoff's statements that "[a]ll of the essential features of Skype Manager require practicing each and every limitation of the asserted claims" (Blok Rep., Appendix A, ¶ 120; Lipoff 758 Inf. Rep., ¶ 68) and that "[t]he features and functions of Skype Manager read directly on the main '758 patent claims" (Blok Rep., Appendix A, ¶ 120; Lipoff 758 Inf. Rep., ¶ 69) in order to conduct "the appropriate *Georgia-Pacific* analysis . . . where, as here, the '758 Patent claims the entire concept of Skype Manager." Blok Rep., Appendix A, ¶ 123. Based on Mr. Lipoff's opinion, Messrs. Blok and Bratic assume that the entirety of the "incremental profits [generated] from Skype Manager in the U.S. of approximately ███████ from June 2, 2014 through May 2021" is directly attributed Skype Manager's use of the claimed invention. *Id*. ¶ 135; *see also* Blok Dep., 13:22-15:24. Messrs. Bratic and Blok proceed to utilize the ██████ figure as a base from which to determine the "appropriate split" between Alcatel-Lucent and Microsoft. *See* Blok Rep., Appendix A, ¶¶ 139-143; Blok Dep., 17:10-18:23. But, as detailed below, Mr. Lipoff's opinion that the entirety of Skype Manager can be attributed to the teachings of the '758 Patent is wholly

conclusory, undermined by his own deposition testimony, and not based on any replicable, reliable methodology.  Mr. Lipoff's failure to distinguish between allegedly infringing and irrefutably non-infringing features of Skype Manager as attributable to the teachings of the '758 Patent renders Messrs. Bratic's and Blok's reasonable royalty opinions inadmissible under Rule 702.

### 2.    Incremental Profits

In deriving their proposed reasonable royalties as to both patents, Messrs. Blok and Bratic apply the ratio of Microsoft's research and development ("R&D") expenses to operating expenses (the "R&D-to-operating expenses ratio"). Blok Rept., Appendix A, ¶ 139; *id*. Appendix B, ¶ 159. They assert that "it is reasonable to expect that the parties [to the hypothetical negotiation] would have considered Microsoft's R&D-to-operating expenses ratio in order to determine how to split the incremental benefits Microsoft obtained from practicing" the asserted patents. *Id*., Appendix A, ¶ 140; *id*. Appendix B, ¶ 161. Messrs. Blok and Bratic then use Microsoft's company-wide R&D expenses to operating expenses ratio to divide the alleged incremental profits for the accused services between the patent owner and Microsoft, rather than any financial data relating specifically to the accused technology or either asserted patent.

## III.    LEGAL STANDARDS

An expert witness may provide opinion testimony only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell*

*Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  Accordingly, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case."  *Summit 6, LLC v. Samsung Elecs. Co. Ltd.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).  A district court shall consider "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation."  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citing *Daubert,* 509 U.S. at 593).  The ultimate inquiry in a Rule 702 determination is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial.  *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).  Accordingly, conclusory opinions "without any elaboration or reasoning" should be excluded as they "will not assist the trier of fact." *Elder v. Tanner*, 205 F.R.D. 190, 193-94 (E.D. Tex. 2001).  "It is not sufficient simply to list the resources [the expert] utilized and then state an ultimate opinion without some discussion of their thought process." *Id.* at 194. The proponent of expert testimony bears the burden of showing, by a preponderance of the evidence, that the expert is qualified under Rule 702. *See* Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592, n.10; *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004) ("The proponent of expert testimony [] has the burden of showing that the testimony is reliable.").

## IV.   WSOU'S REASONABLE ROYALTY OPINIONS SHOULD BE EXCLUDED.

### A.   Mr. Lipoff's Apportionment Opinion for the '519 Patent Is Conclusory and Should Be Excluded.

With regard to the '519 Patent, Mr. Lipoff's "technical apportionment" analysis consists of statements asserting that the "central" feature shared across the Accused Skype Products is the ability "to place and receive telephone calls to and from third parties that use external legacy connections outside of the [SfC], [SfB], or Teams networks." Lipoff 519 Inf. Rep., ¶ 41; *see also id.*, ¶ 44 ("The ability to interwork between the [Accused Skype Products] and legacy voice systems is common to all three Accused [Skype] Products."). Mr. Lipoff contends that while there are various differences among the three accused products (SfC, SfB, and Teams), "these differences . . . are not material to [his] infringement analysis." *Id.*, ¶ 44. He concludes that the '519 Patent reads on the accused products because, allegedly, "all aspects of PSTN calling in [SfC], [SfB], and Teams are dependent on capabilities and implementations described" in the '519 Patent and thus the "entirety" "not just a portion or feature" of the Accused Skype Products' PSTN calling features are covered by the '519 Patent.  *Id.*, ¶ 46. This is the entirety of Mr. Lipoff's "technical apportionment" from which Mr. Bratic and Mr. Blok begin their royalty opinion. Mr. Lipoff incorrectly disregards multiple aspects of the accused products that the '519 Patent admittedly does not cover, and he does so without reason apart from his conclusory statement that these aspects "are not material" to his infringement analysis. He does not set forth any methodology or basis for why he believes various features and functionalities of the accused products are "not material" to his infringement analysis, and his apportionment analysis—to the extent it exists among his conclusory assertions—is completely unreliable. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (rejecting apportionment that was "plucked out of thin air based on vague qualitative notions of the relative importance of the

[accused technology]"); *MLC Intell. Prop. LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) ("We have repeatedly held that when the accused technology does not make up the whole of the accused product, apportionment is required.").

     **B.**     **Mr. Lipoff Failed To Apportion Out Non-Patented Features Of The Accused Products For The '758 Patent.**

Mr. Lipoff did not conduct any apportionment analysis of the '758 Patent. Instead, he simply opined that the '758 Patent covered the entirety of the accused product. *See, e.g.*, Blok Rep., Appendix A, ¶ 120-121 (citing generally Lipoff 758 Inf. Rep. in stating "the '758 Patent covers Skype Manager in its entirety"); *see also id.*, ¶ 135 ("[I]t is Mr. Lipoff's opinion that the '758 Patent covers Skype Manger in its entirety."). These statements are belied by the record evidence, including Mr. Lipoff's own deposition testimony. Messrs. Bratic's and Blok's wholesale reliance on these statements and corresponding failure to apportion out unpatented features of Skype Manager warrants exclusion of their reasonable royalty opinions.

For example, Messrs. Bratic and Blok explain that: "According to Luis Carrasco, Microsoft's Group Product manager for [Skype for Consumer], there are paid functionalities available within Skype Manager." Blok Rep., Appendix A, ¶ 93. Yet notably absent from Messrs. Bratic's and Blok's report is any description of the free features available to Skype Manager users through SfC, for example, the ability to video call and text message other users. Carrasco Dep., 35:21-36:4, 38:23-39:15 (describing Skype-to-Skype video calling and messaging as the "two major services in Skype, which kind of are the reasons Skype is known."). Additionally, Mr. Lipoff concedes he did not test or form an opinion on whether various core SfC and Skype Manager features and functionalities were infringing including: the ability of an administrator to invite users to join their group (Lipoff Dep., 74:4-75:1), the ability of a user to purchase their own Skype Credit (*id.*, 76:11-19), call forwarding (*id.*, 76:20-77:1), voicemail (*id.*,

77:2-8), Skype-to-Skype video calling (*id.*, 77:9-16), the ability of an administrator to allocate subscriptions to users (*id.*, 77:17-78:3), and Skype Connect (*id.*, 79:22-80:6). Because neither Mr. Lipoff nor Messrs. Blok and Bratic apportioned out the use of Skype Manager's non-infringing features and functionalities, these non-infringing uses are included in their royalty base. Notably, Mr. Lipoff admits to limiting his report and opinions to the "specific functionality of Skype Manager that [he] identified that [he] believe[s] infringes the patent[.]" This admission alone wholly erodes the reliability and relevance of his technical analysis for any apportionment purposes. *Id.*, 80:2-6.

WSOU attempts to circumvent the apportionment requirement by citing the Federal Circuit's decision in *Exmark* (*See* Blok Rep., Appendix A, ¶ 122 & n. 233). But nothing in *Exmark* suggests that WSOU's conclusory damages opinion is admissible. In *Exmark*, the Federal Circuit held that using accused lawn mower sales as the royalty base was permissible because the claims at issue expressly recited a lawn mower. "Thus, claim 1 covers the infringing product as whole, not a single component of a multicomponent product. There is no unpatented or non-infringing feature of the product." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018). That is not the case here. The claims of the '758 patent are directed to "[a] method for sponsoring a communication service[.]" '758 Patent, Cl. 1 (Preamble). But Skype Manager has many features and functions entirely unrelated to sponsoring use of a communication service and Mr. Lipoff and Messrs. Blok and Bratic fail to account for them.

Thus, even if WSOU proves that Microsoft infringes the '758 patent, Skype Manager still has both allegedly infringing features and non-accused, indisputably non-infringing features. Accordingly, in order to recover damages, WSOU must apportion only to the patented features

of the accused product. *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339,

1357 (Fed. Cir. 2022) ("Damages should be apportioned to separate out noninfringing uses");

*MLC Intell. Prop. LLC*, 10 F.4th at 1373 (citing *Exmark*, 879 F.3d at 1348); *see also Finjan, Inc.*

*v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) ("[T]he ultimate combination of

royalty base and royalty rate must reflect the value attributable to the infringing features of the

product, and no more.") (quoting *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed.

Cir. 2014)). The failure to do so requires exclusion of the reasonable royalty opinions of Messrs.

Blok and Bratic. *MLC*, 10 F. 4th at 1373 (affirming district court's exclusion of expert opinion

on reasonable royalty because expert "did not properly apportion either the royalty base or the

royalty rate to account for the patented technology.").

### C.   Messrs. Blok's and Bratic's Incremental Profits Analysis for Both Patents Is Not Tied To The Patents-In-Suit Or To The Accused Products.

Messrs. Blok's and Bratic's allocation of alleged incremental profits based on the ratio of

Microsoft's R&D-to-operating expenses is arbitrary, speculative, unreliable, and unsupported for

the purposes of determining reasonable royalty damages. As such, it should be excluded.

For both patents-in-suit, Messrs. Blok and Bratic assert that "[t]he parties to the

hypothetical negotiation would have recognized that this ratio represents the portion of

Microsoft's costs attributable to technology development, as compared to its costs associated

with commercializing" the accused products. Blok Rep., Appendix A, ¶ 139; *id.*, Appendix B, ¶

162. They further opine that "Microsoft's R&D-to-operating expenses ratio is reflective of

Microsoft's own determination of how much money it should invest in technology development

relative to the overall cost of product commercialization." *Id.*, Appendix A, ¶ 141; *id.*, Appendix

B, ¶ 160. Accordingly, they assert that the R&D-to-operating expenses ratio is "a reasonable

measure of the contribution of" the contributions of all three asserted patents to Microsoft's

apportioned incremental benefits from the accused products. *See id*., Appendix A, ¶ 141. Messrs. Blok and Bratic do not cite any authority for these assertions. Nor do they identify any case in which a court has approved of this methodology. And Mr. Blok testified that he was not aware of any Microsoft documentation to support his and Mr. Bratic's analysis at such a granular level. *See* Blok Dep., 22:9-23:3, 55:14-56:17.

Critically, this method is flawed at least because Messrs. Blok and Bratic use company-wide R&D and operational expenditures to generate their proposed damages figures, rather than making any attempt to identify R&D and operational expenditures that actually relate to the accused products. A company's R&D costs are divided among the roster of products and services they offer and, importantly, account for research conducted with an eye toward future opportunities or product development. *See* Blok Dep., 22:19-23:3 (describing Microsoft's R&D costs as used to "provide an understanding of how Microsoft allocates its revenue between developing technology and promoting that technology, irrespective of whether it relates to Skype."); *see also* Blok Rep., Appendix A, ¶¶ 139-141; *id*., Appendix B, ¶¶ 159-161. Yet Messrs. Bratic's and Blok's analysis treats the R&D-to-operating expenses ratio with respect to the accused products as a continuous figure, failing to account for their development and initial implementation being far in the past. *See* Blok Dep., 20:20-21:16, 57:4-59:4; Blok. Rep., Appendix A, ¶ 142; *id*., Appendix B, ¶ 159. Messrs. Bratic and Blok ignore this and other pertinent realities.

Because Messrs. Blok and Bratic use company-wide expenses instead of isolating R&D and operational expenditures specific to the accused products, their methodology necessarily includes Microsoft's R&D expenditures toward activities entirely unrelated to the asserted patents or accused products. *See id.* at 93 (citing to Microsoft's 2021 10-K in discussing that

R&D costs are divided among a broad range of a company's products and services). Indeed, Mr. Blok conceded that the R&D and operating expense line items on which he and Mr. Bratic rely are not broken out in relation to any particular patent or product. *See* Blok Dep., 16:25-17:9, 21:22-22:8 (testifying he does not believe Microsoft breaks out R&D or operating expenditures based upon specific projects), 55:14-56:17 (testifying that he had not seen R&D expense information related specifically to Skype for Consumer, Skype for Business, or Teams). Messrs. Blok and Bratic do not provide any basis for relying upon expenditures unrelated to the asserted patents or accused products.

The failure to tie the R&D-to-operating expenses ratio to the patents-in-suit or the accused products constitutes an independent basis for excluding all of Messrs. Blok's and Bratic's incremental profits analyses. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (quoting *Daubert*, 509 U.S. at 591 ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")). Instructive on this issue is the decision in *Droplets, Inc. v. Yahoo, Inc.*, Case No. 12 cv-03733-JST, Dkt. 1000 (N.D. Cal. Jan. 12, 2022).

In *Droplets*, the court excluded a damages expert's profit-split analysis, in part because the expert based his report on the defendant's internal analysis of its ROI, and "fail[ed] to limit its focus to ROIs on investments in items similar to the accused features of the infringing product." *Droplets* Order at 6. Although the expert limited his analysis to three specific ROIs, the court noted that "[t]he connection between these ROI estimates and [defendant's] profits on [patentee's] technology, however, is unstated." *Id*. And while the patentee argued that there were similarities between the accused products and the ROIs, the court refused to speculate or gap-fill

where the expert did not "offer any explanation for how the projects in the historical ROIs are similar to the accused features." *Id.*; *see also id.* ("[T]he onus is on [patentee] to identify and map these similarities.").

The *Droplets* court also excluded the expert's profit-split analysis based on his reliance on the defendant's "customer lifetime values and its gross profit margins." *Id.* at 7 (internal quotations omitted). Although the expert asserted that these figures were "sign[s] of what [defendant] would be willing to pay" for the patented technology, the court disagreed:

> There is no basis in economics for these assumptions. Neither Nordstrom's gross profits on all of its products nor its costs of acquiring an additional customer are reliable indicators of what it would spend to use Droplets's technology. *See Nat'l Prod., Inc. v. Arkon Res., Inc.*, No. C15-1553-JPD, 2017 WL 5499801, at *2-3 (W.D. Wash. Nov. 16, 2017) (excluding expert testimony that relied on "estimated cost of goods sold" and "overhead expense" percentages that "were not tabulated from actual costs incurred from the sale and manufacture of only the accused products, but were instead calculated by dividing expenses incurred from the sales of all [defendant's] products"). Thus, the Court excludes Bergman's opinion based on these factors as well.

*Id.*

Like the expert in Droplets, Messrs. Blok and Bratic have not even attempted to explain how the R&D or operating expenditures they rely on relate to the accused features. Nor have they provided any economic basis for their assumption that Microsoft's company-wide R&D-to-operating expenses ratio reflects its willingness to pay for the specific patented technology at issue in these cases. Therefore, WSOU cannot meet its burden of showing that the R&D-to-operating expenses ratio is the base of a reliable incremental profits analysis, and the Court should exclude this analysis.

## V.   CONCLUSION

For the foregoing reasons, the Court should exclude the technical apportionment opinions of Mr. Lipoff and the reasonable royalty opinions of Messrs. Blok and Bratic.

13

DATED: May 27, 2022

Respectfully submitted,

*/s/ Irene Yang*

Melissa R. Smith, Bar No. 24001351
melissa@gillamsmithlaw.com
James "Travis" Underwood, Bar No.
24102587
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Michael J. Bettinger
mbettinger@sidley.com
Irene Yang
irene.yang@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 772-1200
Fax: (415) 772-7400

Richard A. Cederoth
rcederoth@sidley.com
John W. McBride
jwmcbride@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Brooke S. Boll
brooke.boll@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 896-6633
Fax: (213) 896-6600

***ATTORNEYS FOR MICROSOFT
CORPORATION***

## CERTIFICATE OF CONFERENCE

I certify that, pursuant to Local Rule CV-7(G), counsel for Microsoft conferred with counsel for WSOU regarding the relief sought in this motion, and was advised that Counsel for WSOU opposed.


DATED: May 27, 2022                             */s/ Melissa R. Smith*                             


## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned cases were subsequently served on all counsel of record by electronic mail.

DATED: May 27, 2022                             */s/ Melissa R. Smith*